IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2005

## RUSSELL ALLEN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Maury County**
**No. 11192     Robert L. Jones, Judge**

_____

**No. M2004-00217-CCA-R3-PC - Filed April 15, 2005**

_____

In 2000, the Petitioner, Russell Allen, was convicted of aggravated sexual battery, and was sentenced to serve eight years. Subsequently, the Petitioner filed a petition for post-conviction relief, and the post-conviction court dismissed the petition, concluding that his petition was not filed within the statute of limitations. On appeal, the Petitioner contends that the post-conviction court erred when it dismissed his post-conviction petition. After thoroughly reviewing the record and the applicable authorities, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal) and Claudia S. Jack, Columbia, Tennessee (at trial and on appeal) for the Appellant, Russell Allen.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Mike Bottoms, District Attorney General; and Lawrence R. Nickell, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Petitioner's conviction for aggravated sexual battery. On direct appeal, the Petitioner challenged his sentence, and this Court recited the facts as follows:

On the afternoon of May 18, 1999, the appellant, Russell Allen, went to the home of a co-worker, Jan Moody. Only Moody's teenage daughter, M.M.[1], was home at the time. M.M. admitted the appellant into the home because she recognized him as a co-worker of her mother. When the appellant entered the home, he was carrying a bottle of Sun Drop cola and Crown Royal whiskey. The appellant offered M.M. a drink of the alcohol and began following her through the house. M.M. refused the alcohol and told the appellant that her mother would be home shortly. The appellant then pulled a gun from his pocket and began loading it. Upon seeing the appellant's actions, M.M. became so afraid that she knelt, covered her head, and began crying. The appellant placed the gun to M.M.'s head, told her to remove her clothes, and ordered her to perform oral sex on him.

M.M. did as the appellant ordered. After a minute or two, M.M. asked the appellant if she could stop because her mother would soon be home. The appellant became repentant and apologized to M.M., offering to give her money and threatening to kill himself. M.M. again asked the appellant to leave and he did so. Immediately following the appellant's departure, M.M. called her mother at work. Moody, the victim's mother, testified that, during the conversation, her daughter was incoherent and hysterical, "crying and screaming" at the same time. Moody was able to understand the word "gun" and told M.M. to call 911. After speaking with her mother, M.M. called 911 and reported the assault. The police and Moody arrived at the residence shortly after the call. Upon the arrival of the police, M.M. gave one of the officers a bullet that she found on the living room carpet after the appellant left the house. The bullet was determined to be a .25 caliber bullet designed for a semi-automatic weapon.

The appellant was indicted and tried for the aggravated rape of M .M. At trial, M.M. testified that the gun the appellant had on the day of the offense was a handgun, further explaining that "it was the kind of gun where the bullets go in where that comes out, and the bullets go into that little round thing." M.M. also later testified that the gun was similar to guns used to play Russian Roulette. She asserted that neither she nor her mother ever kept a gun in the house; therefore, the bullet must belong to the appellant. M.M. surmised that the appellant dropped the bullet while loading his gun. The appellant testified that he did not own a .25 caliber weapon but did admit that he owned a .380 caliber semi-automatic pistol.

The jury convicted the appellant of aggravated sexual battery. The trial court sentenced the appellant as a Range I offender to eight years incarceration in the Tennessee Department of Correction. Subsequently, the appellant filed a motion for

---

[1]It is the policy of this court to refrain from using the name of a minor who has been the victim of a sex crime.

new trial alleging, among other things, that, because there had been no preliminary hearing, the appellant was unaware prior to trial that M.M. would testify that the gun used during the offense was a revolver. He further alleged that he was unaware that the semi-automatic bullet introduced by the State would not fire in a revolver. After trial, appellant's counsel was told by a bailiff that there is no such gun as a .25 caliber revolver, and, regardless, the .25 caliber semi-automatic ammunition would not fit into a revolver due to the difference in gun designs. The appellant contended that this evidence would be crucial in impeaching the credibility of the State's main witness, M.M. A hearing was held on the appellant's motion for new trial. The trial court issued an order denying the appellant's motion for new trial, finding that the appellant had not met the requirements necessary for granting a new trial based upon newly discovered evidence. The appellant requests that this court review the trial court's denial of a new trial based upon newly discovered evidence.

State v. Russell Allen, No. M2000-01656-CCA-R3-CD, 2001 WL 767003, at *1-2 (Tenn. Crim. App., at Nashville, Jul. 10, 2001), *perm. app. denied* (Tenn. Dec. 17, 2001). This Court affirmed the judgment of the trial court.

On February 11, 2003, the Petitioner filed a petition for post-conviction relief. At the hearing on the post-conviction petition, Gary Howell ("Counsel"), testified that he was retained to represent the Petitioner at his jury trial and on direct appeal. Counsel said that during the trial he told the trial judge that there should be "no 'lesser include[d]' [instructions given to the jury] and it should be aggravated rape or nothing, based on the testimony." He said that the Petitioner was acquitted on aggravated rape, but found guilty of the only lesser-included offense that was instructed, which was aggravated sexual battery. He stated that the Petitioner's defense was an alibi defense, and he called two alibi witnesses at trial. Counsel testified that the Petitioner was convicted, the Petitioner appealed his conviction to this Court, and this Court affirmed the Petitioner's conviction, noting that its decision was partially based on an incomplete record. Counsel said that he received the order from this Court, notified the Petitioner of the result, and forwarded the briefs and transcripts to the Petitioner. He stated that he explained to the Petitioner his right to appeal to the Supreme Court, and Counsel sent the Petitioner a letter that advised the Petitioner that Counsel would no longer represent him. Counsel testified that, after he received this Court's decision, he did not file a motion to withdraw as counsel of record because "it [n]ever occurred to [him] to do a withdrawal." Counsel testified that he received notice that permission to appeal to the Supreme Court had been denied a few days after the notice was dated, which was December 17, 2001. He said that he put the notice in the Petitioner's file, but he did not send a copy of it to the Petitioner because he "assumed that [the Petitioner] got a copy." He admitted that, at the bottom of the notice, it showed "copy to Jennifer L. Bledsoe and Judge Robert L. Jones."

On cross-examination, Counsel testified that he discussed the facts and trial strategy with the Petitioner, including the jury instructions, but he did not have an independent recollection of this

discussion. He stated that the Petitioner did not indicate to Counsel that he had difficulty understanding these conversations, and the Petitioner asked helpful and intelligent questions about his case. Counsel testified that he did not discuss representing the Petitioner in his appeal to the Supreme Court, and Counsel's representation at that level was not contemplated by the fee agreement. Counsel said that he sent a letter to the Petitioner about this Court's decision, the Petitioner responded that he wanted Counsel to appeal to the Supreme Court, and Counsel responded that he would not represent the Petitioner further.

The Petitioner testified that he was aware that Counsel appealed the trial court's decision, and Counsel sent him a copy of the appellate brief that contained some of the issues the Petitioner wanted raised. He said that Counsel sent him notice informing him that he could appeal to the Supreme Court, and the Petitioner applied for permission to appeal to the Supreme Court. The Petitioner testified that he received help writing the application from a legal aid inmate in the prison law library. He said that he did not learn that his application had been denied until he wrote the clerk of the court and received a response that stated his application to appeal was denied. The Petitioner testified that he talked with an inmate who told him that he had missed the deadline to file an appeal, and he did not know that he had to file a petition for post-conviction relief within one year from the time that the Supreme Court denied his permission to appeal. He testified that he indicated that he was filing his application pro se, and, when he did not receive any notice from the clerk of the court, he thought "they may have just forgot about [him]." On cross-examination, the Petitioner testified that he filed his application for permission to appeal to the Supreme Court on September 11, 2001, and he was not notified that it was denied until January 23, 2003. The Petitioner testified that he did not try to find out the status of his application because an inmate told him not to "bother them."

The post-conviction court denied the Petitioner's petition for post-conviction relief and, although it determined that the Petitioner's action was time-barred, it also discussed the merits of the Petitioner's claim, stating:

> The court has considered the merits of the post conviction relief, whether it should have or not. But having done so, the court finds at this time that the statute of limitations actually bars a consideration on the merits, because the one year had passed.
>
> . . . .
>
> I don't think under the case law it is, the statute of limitations is tol[led] in any way by the clerk's failure of [notifying the Petitioner] directly.
>
> . . . .

-4-

All being said, therefore, the court dismisses this petition for post conviction relief, both on the statute of limitations grounds, but also on the merits.

On January 20, 2004, the Petitioner timely filed a notice of appeal.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred by denying his post-conviction petition because: (1) the statute of limitations should be waived because he was not notified that the Supreme Court denied his application for permission to appeal until after the statute of limitations period had expired; and (2) his trial counsel was ineffective by not requesting that the trial judge charge the jury on all of the lesser-included offenses.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

Tennessee Code Annotated section 40-30-102(a) promulgates the statute of limitations for a petitioner for post-conviction relief:

> [A] person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expirati

Tenn. Code Ann. § 40-30-102(a) (2003). The Post-Conviction Procedure Act permits the extension of the one-year statute of limitations period for: (1) claims based on a final appellate court ruling establishing a constitutional right not recognized at the time of trial, but given retroactive effect by the appellate court; (2) claims based upon new scientific evidence establishing that the petitioner is

actually innocent; and (3) claims seeking relief from an enhanced sentence that was based upon convictions later determined to be invalid. Tenn. Code Ann. § 40-30-102(b). Additionally, due process requires, in certain circumstances, that the statute of limitation be tolled. See Williams v. State, 44 S.W.3d 464 (Tenn. 2001); Seals v. State, 23 S.W.3d 272 (Tenn. 2000); Burford v. State, 845 S.W.2d 204 (Tenn. 1992). In Williams, the petitioner filed his post-conviction petition nine months after the statute of limitations had expired, alleging that no notification was given by his appointed counsel with regard to the status of his direct appeal, counsel's intent to withdraw, and counsel's untimely application for permission to appeal to the Supreme Court. Williams, 44 S.W.3d at 466. The Tennessee Supreme Court stated that "[i]f a defendant erroneously believes that counsel is continuing to represent him or her, then the defendant is essentially precluded from pursuing certain remedies independently." Id. at 469. After reviewing the record, the Williams court noted that the petitioner "might have been denied the opportunity to challenge his conviction in a timely manner through no fault of his own but because of the possible misrepresentation of his counsel." Id. at 468. Our Supreme Court determined that if such misrepresentation existed, then due process required the tolling of the statute of limitations. Id. at 471.

In the case under submission, the Petitioner attributes his failure to file a timely petition to his trial attorney. The Petitioner alleges that he did not receive any communication from his attorney regarding the Tennessee Supreme Court's denial of his Rule 11 application. From the record, we determine that on August 17, 2001, the petitioner's attorney sent a letter to the petitioner informing him that this Court affirmed the Petitioner's conviction. That letter also stated that "[the Petitioner] ha[s] until September 10, 2001 to file an appeal." The record also indicates that the Petitioner responded to his attorney on August 23, 2001 to request that Counsel file an appeal, on the Petitioner's behalf, to the Tennessee Supreme Court. The record shows that Counsel responded on August 28, 2001, and specifically stated that "[Counsel's] representation of [the Petitioner] included trial and the first level of appeal. [The Petitioner] . . . ha[s] until September 10, 2001 to file an application for permission to appeal with the Tennessee [S]upreme Court." Counsel included the Petitioner's transcripts and briefs that were filed in this Court and stated that "[t]his concludes [Counsel's] representation of [the Petitioner] in this matter." In Williams, our Supreme Court stated that the question to consider "is whether the [petitioner] in this case was, in fact, misled to believe that counsel was continuing the appeals process." Id. In this case, it is clear that the Petitioner was under no reasonable belief that Counsel was pursuing the Petitioner's appeal to the Tennessee Supreme Court. On September 11, 2001, the Petitioner filed his pro se application for permission to appeal to the Tennessee Supreme Court, and the application was subsequently denied on December 17, 2001. We conclude, therefore, that the Petitioner's post-conviction petition filed on February 11, 2003, was filed beyond the one-year statute of limitations. Further, based on the record, there is no evidence of a misrepresentation by the Petitioner's trial counsel that would require this Court to toll the statute of limitations to allow the Petitioner to pursue his post-conviction petition.

We also note that in Burford, the Tennessee Supreme Court recognized that "in certain circumstances, due process prohibits the strict application of the post-conviction statute of limitations to bar a petitioner's claim when the grounds for relief, whether legal or factual, arise . . . after the point at which the limitations period would normally have begun to run." Sands v. State,

903 S.W.2d 297, 301 (Tenn. 1995); see Burford, 845 S.W.2d at 208. Therefore, the supreme court developed a three-part test to determine whether strict application of the post-conviction statute of limitations violates a petitioner's due process rights. To make such a determination, a court must:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Id. In the case under submission, the trial court imposed the challenged conviction on February 17, 2000, and this Court affirmed the Petitioner's sentence on appeal on July 10, 2001. The Tennessee Supreme Court denied permission to appeal on December 17, 2001, and, therefore, the Petitioner was required by statute to file his petition for post-conviction relief within one year of that date, but he did not do so until February 11, 2003, well over one year after the filing deadline. We conclude from our review of the record that none of the grounds for post-conviction relief presented by the Petitioner arose after the limitations period would have normally commenced. This Court has stated that [a]ll that due process requires . . . is that the law be sufficiently clear to give a person a reasonably understandable warning of its requirements." Tracy Lamar Belle, Sr. v. State, No. E2000-02787-CCA-R3-PC, 2001 WL 823410, at *3 (Tenn. Crim. App., at Knoxville, Jul. 23, 2001), *no perm. app. filed*; see also Burford 845 S.W.2d at 208. Further, this Court has held that the post-conviction statute of limitations does not include a discovery rule. James Marvin Martin v. State, No. E2004-00740-CCA-R3-PC, 2004 WL 2280425, at *3 (Tenn. Crim. App., at Knoxville, Oct. 11, 2004), *perm. app. denied* (Tenn. Feb 28, 2005). Thus, we conclude that application of the post-conviction statute of limitations in this case does not violate the Petitioner's due process rights. The petition is time barred, and the post-conviction court was correct to rule accordingly. This issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the judgment of post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE